REGAN, Judge.
Plaintiff, Aaron Hogan, instituted this suit against Walter Wiltz, who conducts his business under the trade name New Orleans Body & Fender Works, and his employee, Louis Calloway, endeavoring to recover the sum of $20,000, representing personal injuries, loss of wages, and medical expenses incurred as the result of Calloway’s striking plaintiff in his left eye.
The defendant Walter Wiltz answered and denied that Calloway was acting within the scope and course of his employment when the incident occurred and in justification asserted that plaintiff had orally abused and struck Calloway before he struck plaintiff, who was under the influence of liquor.
The defendant Calloway answered and reiterated that he was not acting as an employee of Wiltz when the incident occurred, and he denied liability for the injuries incurred by plaintiff insisting that he had struck the plaintiff in order to defend himself from an unprovoked attack; in the alternative, he pleaded the contributory negligence of the plaintiff in provoking the incident and asserted that he was under the influence of liquor.
From a judgment in favor of the plaintiff and against the defendant Calloway for the sum of $1,000 and dismissing plaintiff’s suit against the defendant Wiltz, defendant Calloway has prosecuted this appeal.
The record initially reveals that plaintiff at the time the battery was committed was approximately 56 years of age and weighed 120 pounds and the defendant was approximately 36 years of age and weighed approximately 190 pounds.
Plaintiff testified that on December 21, 1955, his son brought his car to the New Orleans Body & Fender Works, which was operated by Wiltz, for the purpose of having it painted. On December 24, at about 5:30 P. M. he decided to visit the paint shop to see what progress was being made. He learned that the car was finished. He did not have sufficient money with him to. pay the bill, and then asked Wiltz to request one of his employees to drive him home to get the money. Wiltz agreed and' sent Calloway. Plaintiff and Calloway left the shop in the former’s car. Plaintiff related that Calloway drove his car recklessly, which caused him to complain and ultimately to tell Calloway that he planned to inform Wiltz of what had occurred. When they arrived at his home, plaintiff experienced difficulty in locating his money; the delay caused Calloway, who had remained in the car, to become impatient, which he manifested by blowing the vehicle’s horn. In any event, they finally returned to the paint shop. Plaintiff then got out of the car and walked over to Wiltz intending to discuss Callo-way’s recklessness; and when he turned around to point at Calloway, he was struck in his left eye.
Leo Williams[1] appeared as a witness on behalf of the plaintiff and related that he was walking up South Claiborne Avenue, and when he reached the filling station driveway which is in front of Wiltz’ business establishment, a car moving at a fast rate of speed turned into the driveway barely missing him. He was provoked by this. He observed plaintiff and the driver Calloway emerge from the car. Plaintiff walked over to where Wiltz was standing and started talking to him, at which time Calloway struck him, and he fell to the ground. Williams explained that he had intended going into the shop to remonstrate with the driver of the car which nearly hit him, but when he saw Calloway strike the plaintiff, he decided *663 that the better part of valor was discretion and therefore continued on his way.
Plaintiff’s wife also appeared on his behalf as a witness and simply testified that when she arrived at the paint shop between 7:30 and 8 P. M., she found her husband sitting in his car complaining of his eye.
Defendant Calloway in relating his version of the incident testified that the plaintiff came to the New Orleans Body & Fender Works on Christmas Eve to pick up his car. He did not have the money to pay the bill, and Wiltz refused to let him have the car. It was after 5 P. M., the shop was closed, and Calloway was preparing to leave for home. He overheard plaintiff asking Wiltz to have some-ione drive him home to get the money. Cal-¡loway, although he had terminated his employment for that day, volunteered to drive ■plaintiff home. This was agreeable to 'Wiltz, and the two men departed in plain-tiff’s car. They had just left the shop •■when plaintiff asked Calloway to let him idrive the vehicle. Calloway advised him hhat he could not do this because he was responsible for the car. Thereafter plaintiff began to “curse” and “nag” him. On two occasions Calloway threatened to •drive the car back to the paint shop, but -plaintiff pleaded with him to drive him 'home.
When he arrived home plaintiff ate supper while Calloway waited in the car for .an estimated 30 or 40 minutes. When ■Calloway blew the horn for plaintiff to return to the car, he cursed and threatened -to shoot him. On the return trip plaintiff told Calloway that he would inform 'Wiltz how recklessly Calloway had driv.en his car. When they reached the shop ■Calloway asserted that he walked into the •office and gave Wiltz the keys to plaintiff’s • car; and since plaintiff had threatened •to report him to Wiltz, he waited to explain his version of what had occurred. Both Wiltz and plaintiff came out of the paint shop together, and the door was locked. Wiltz then walked over to an adjacent filling station where he customarily left the keys to his establishment for safekeeping. Plaintiff then noticed that Calloway was still present, and he began abusing him and then struck him in the face; Calloway in turn struck plaintiff in the eye, knocking him down. Wiltz stated that he saw both blows as he was returning from the filling station to the situs of the altercation.
Both Calloway and Wiltz testified that plaintiff was under the influence of liquor. James Sturcks, an employee of Wiltz, also appeared as a witness on behalf of the defendants and testified that he could smell liquor on plaintiff’s breath.
In any event, the blow which Calloway delivered to plaintiff’s left eye resulted in injury thereto which was diagnosed as
“ * * * post-traumatic changes referrable to a closure of the left la-' crimal system, apparently causing tears to go onto his face rather than to be execreted through the lacrimal system into the nose.”
He was operated upon once, and he was required to visit the Eye, Ear, Nose and Throat Hospital during the entire year of 1956 and until June of 1957.
The lower court for the foregoing injuries and expenses incurred as a result thereof awarded plaintiff the sum of $1,000.[2]
Predicated on the foregoing facts the trial court concluded that the defendant Calloway had committed an unprovoked battery upon the plaintiff and also dismissed plaintiff’s suit against the employer, Wiltz, apparently for the reason that Cal-loway had terminated a day’s work at 5 P. M. and was therefore not acting with *664 in the course and scope of his employment when the altercation occurred.[3]
The question which this appeal has posed for our consideration is whether that finding of fact is so unsupported by the evidence as to warrant reversal by us.
We have made a careful analysis of the record, and we believe that the whole tenor of the evidence contained therein supports the conclusion that Cal-loway committed an unprovoked battery upon plaintiff.
The conclusions of the trial court will not be disturbed when questions of fact are exclusively encompassed by the judgment, unless clearly erroneous.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. Counsel for defendant insists that Williams’ testimony should be disregarded because ' of the improbable manner in which he was procured as a witness. Williams testified that he learned of plaintiff’s identity while engaged in a conversation in a saloon and thereafter was contacted and agreed to testify on behalf of plaintiff.

. Plaintiff did not answer the appeal; therefore, we are unable to consider increasing the amount of the award, as requested both in brief and oral argument.

. Plaintiff did not prosecute an appeal from the dismissal of his suit against Wiltz; therefore, this interesting aspect of the case is not before us.